Gin V. Barr is submitted on the briefs and we'll next hear Gipaya v. Wilson. Good morning, Your Honors. Peter Van de Messer on behalf of Gerald Gipaya. This is an appeal of a dismissal of a employment discrimination complaint filed by an Air Force veteran who works at Hickam Air Force Base investigating airplane accidents for a squadron of Air Force and Hawaii National Guard planes. He's worked for the Air Force for 46 years in various capacities. He was terminated by the Air Force after requesting reasonable accommodation for a stroke by a sergeant. Although the Air Force knew about the stroke and disabilities and prior supervisors took steps to accommodate his injuries, a new sergeant rejected Gipaya's request to throttle back on work never part of his job description, threatened him with dismissal, and fired him six months later under the pretext that it was necessary because of budget uncertainties in Washington. There are a lot of facts in this case and almost none of them are contested. And to the extent that there are contested facts, there's solid evidence to raise tribal issues of fact and summary judgment should never have been entered in this case. I would say from the beginning the biggest concern I have with the judge's ruling and also the answering brief is utterly ignoring the critical testimony by Sergeant Murphy that he called and talked to prior supervisors on the day he received the June 29th 2012 letter asking for a reduction in his workload. Those two individuals, one of whom had already received a copy of the request for a reduction in work, I will call him Mr. Q so I don't mispronounce him, he was Mr. Gipaya's previous supervisor, he received exactly the same request and he immediately characterized it as a request for a reasonable accommodation like had occurred before. And the judge is finding that somehow this letter which was sent to the immediate supervisor was not a request for an accommodation when literally everybody in the room knew this gentleman had had a already received numerous accommodations by prior supervisors was somehow not a request. Could the employee have a communication with their employer even if they have a serious medical condition? That's not a request for accommodation. So this email, Mr. Gipaya indicates that he's going to throttle back his work to 100% of what he's required to do. He feels as if he's been asked to do more than his job description and that others in his area or his department are not carrying their fair share of the workload. But he doesn't say anything in there that I could see that this was a request for accommodation or that had anything to do with his health. It really appeared just to be a complaint that his co-workers weren't doing their fair share and so he just wanted to cut back to 100%, not that he wanted to change duties or restricted duties or anything to do with an accommodation for his stroke. So where is it in that email that Sergeant Murphy was supposed to find a request for accommodation? Well, obviously we cited the Barnett and Bank case, Your Honor. And we also cited the other cases that have followed that 2002 decision. It was reviewed by the Supreme Court and vacated on other grounds. But it is clear that there's a triable issue of fact of whether that letter, in the context of the accommodations and stroke and disabilities that the Air Force was aware of, was requested for purposes of an accommodation. So I think your answer is he never said it in the email or in his subsequent conversation with the sergeant. He never actually verbalized it. Barnett addresses exactly the situation where the employer is aware that there is a need for accommodation, but there's no specific request. Now, I understand Barnett has a limitation and that is some comments cited about whether or not he was incapable of requesting it. None of the cases, however, that limit Barnett with regard to that particular factor involved a situation where the employer knew all the details about prior accommodations and prior disabilities. This is so clearly a letter for requesting accommodation. But what prior accommodations did he have? What's in the record about his prior accommodations? All we have is the testimony of Murphy in his deposition, where he says that he, there's a specific quote by Miller in both the opening brief and the reply brief, that says, we accommodated this gentleman because of his disabilities. Miller was his prior supervisor, specifically because of the five years before the decision in this case in front of the EEO counselor, that part of the reason he needed this restriction is because product returns involved weightlifting. Again, it isn't, I understand where the judge is coming from, but the judge, as far as I'm concerned, made a factual determination, which is not what you do in a summary judgment motion. And I don't think that you stop with what's stated in the specific document. When you look at the Barnett case, when you look at the Humphrey case, which is also cited, they clearly say that if it is clear from the overall record that there were prior accommodations and that there were injuries and disabilities, all you have to do is look at what happened when Mr. Q received that exact same email, how he reacted. He did not- Wait, hold on a second. I want to make sure I understand what you're claiming was the request for accommodation. So I understand that Mr. Kapaya had said that this unfair workload. And he asked us to cut back to 100%. But he didn't ask for an accommodation not to lift things, not to go on top of airplanes, not to do anything. And I think if I recall the testimony you're discussing, the prior supervisor said something about be careful, don't have them climb on top of planes. But that seems to be far different from just saying I only want to do my amount of work and not anybody else's to make that a request for accommodation. I agree. And that analysis is in the judge's ruling. The problem is, if you look at his testimony, there's a reason why he didn't whine and scream and complain about his disabilities. This is a man who worked for the Air Force for 46 years and had nothing but a sterling record the whole time, even after his stroke. He was very reluctant to complain because he knew that complainers in the services get in trouble. That's what he said. I'm not going to make a big deal about my disabilities. But the fact is, his prior supervisors had reacted to it. And under Barnett, if it is clear that somebody has disabilities and you accommodate them, and they come back later on, the requirement for interactive discussions and for accommodation is a continuous one. That's what Humphrey says. And clearly in this case, that's the hurdle, of course, this court has to get over. I acknowledge that. The real problem is that he's in the same position before the stroke as he is before, and that's this feeling a little put upon because of extra duties. So he does extra duties before. You are almost making it sound like the employer has to divine the need to accommodate when it's not asked for, when on this record, we already had that situation, I think, way back in 2006. So that's the hurdle I'm having here. Maybe you can bridge the gap. I would direct you to the date this started. If you look at the email, it's a 2006 situation. Why was there no complaint from 2006 to 2012? He did all this work without complaining and without requesting an accommodation until after his stroke. What he essentially said, and this is in the record in his declaration, is that after his stroke, things changed. It wasn't the same as before. He volunteered to do that other work before and never filed this. But the stroke was 2010, and the email to Sergeant Murphy was 2012. So two years later, he sends an email saying, basically, he is complaining. You say he testified you don't complain in the service, but he's complaining about his co-workers. Six years later, ma'am. Well, two years after the stroke. It was 2010. It was six years after he started getting assigned this work. Sure. So from 2006 to 2012, he feels as if he's being put upon and worked too hard. But the stroke's in 2010, and that's the thing that causes the need for accommodations. Sergeant Q received it. Sergeant Q received it, you mean, because Sergeant Murphy asked him about Mr. Capaia. You're not suggesting that Mr. Capaia sent a similar email to Sergeant Q and said, I need to reduce my workload. No, identical email. It was copied. Mr. Q and Murphy received exactly the same email. Right, the same email. We're not talking about two different requests. You're saying this one email was sent to Sergeant Q, his prior supervisor, and that's sufficient to be a request for accommodation. Let's focus on how Sergeant Murphy responded. He went to HR. He was asked by the prior supervisor, go to HR, work on an accommodation. That's clear in the record. That's not contested. He goes over there and he says in his deposition, I don't have to tell them about the disabilities and the stroke, because that's none of their business. That was his reaction. How is he supposed to relate to HR what happened and how to respond to this email? By not telling them that this gentleman had a stroke and disabilities and has been accommodated by prior supervisors. And what's his motivation? What is Murphy thinking? Murphy is reacting to exactly the idea in the service that whiners get fired, which is ultimately what happened. This gentleman was fired six months after Murphy threatened to dismiss him if he did not do everything he was assigned to do without complaint. Does it matter on this record that we don't have anybody else similarly situated who was treated differently? We do, because he testified, he meaning Mr. Gapaya, that assuming we're talking about similarly situated, your honor, we're talking about one man, which is another re-employed annuitant who was working on fuel systems, Horiyuchi. Horiyuchi was described by my client as someone who had no disabilities, no injuries, and no prior accommodations. That's a flat out difference between the two of them. That's in the record. It was ignored by the district court, but that's in the record. But is it significant that the other employee was doing job functions that Mr. Gapaya was not doing? The other employee had various certifications and could do work that the service or the Air Force determined could not easily transfer to somebody else. Yeah, and of course, that is exactly why my client testified, which was never contested by the Air Force, that he is just as qualified and had prior certifications to do fuel systems. And that is why the false statement by Novotny in his justification, in the declaration attached to the motion for summary judgment, that says that my client had no experience or training in this subject of fuel systems is a false statement. Which, Your Honor, is exactly why that was transmitted, obviously, by Murphy, because all Novotny did was rubber stamp a recommendation by a sergeant who six months before had threatened to dismiss him, not because he wasn't doing the work, but because he had the temerity to ask for a work reduction. You want to save your remaining time? Yes, thank you. Thank you, Your Honor. May it please the Court, Case in Roche, the United States. Plaintiff alleged discrimination on a variety of bases, on a number of theories, and the District Court correctly rejected each of them. On all of the events predating Plaintiff's termination from the Air Force, the District Court correctly dismissed those claims because Plaintiff failed to consult an Equal Employment Opportunity Counselor following the alleged misconduct. And out of claims arising out of Plaintiff's termination, the District Court correctly rejected each of the claims because there was insufficient evidence to survive summary judgment on each of the claims. As to Plaintiff's claim that he was discriminated against on the basis of his disability, there was no evidence that he was terminated because he was unable to do his work. In fact, as Plaintiff's counsel just conceded, he had stellar performance reviews throughout his time in the Air Force. He was also not terminated in retaliation for purportedly requesting disability accommodations. As Judge Beatty commented, the communication between Plaintiff and the Air Force was merely an expression of frustration with his duties that he had been performing since 2006, long predating the stroke. And Plaintiff presented no evidence that the events following the stroke caused him to be given additional work or that he was ever stressed in his position. Again, Plaintiff stated in his deposition that he performed all of his tasks admirably and without any particular complaint from his supervisors. He was never written up for poor performance and was consistently given positive performance reviews. And Plaintiff's claims for a hostile work environment simply bear no scrutiny. There's no evidence that he was subject to an abusive environment in his workplace. And though he claims that he was purportedly walking on eggshells following the exchange with Sergeant Murphy in 2012, there was simply no other evidence to address that he had been subject to any particular working environment that was hostile to him. If the court has any questions about the record, I'm happy to address them. It's worth stating that Plaintiff's counsel repeatedly adverted to the 2012 email which included Sergeant Q, as the court is referring to him. There's no evidence of any prior email to that sergeant. Though he would have been aware of Plaintiff's physical condition, Plaintiff was repeatedly given tasks that would accommodate him. And as Plaintiff's counsel admits, he was not unable to do those tasks. Well, I have a question. So Mr. Capaia argues that he made a request for an accommodation or what should have been understood as a request for accommodation when he asked to only do his assigned task and not do more than he was supposed to do. So assuming we get past that hurdle and we decide that that was a request for accommodation, then the next point I believe Plaintiff is making is that that was the protected action and then the retaliation was when he was terminated. And so then we go to analyzing whether the Air Force had a legitimate reason for the termination. They had posited the reduction in forces that was mandated by higher forces by command and they had to do that. But the record indicates that Mr. Capaia was the only one, the only re-employed annuitant who was terminated as part of this process. Others were retained, such as a historian, and that six months after this process, the Air Force hired somebody else back into that position. How do you address that? Two responses, Your Honor. First, the historian was actually a, I believe, oh no, excuse me. So the historian was part of a different squadron who would have been subject to different mission critical needs and as the Air Force's enterprise-wide directive explained, each squadron would have had different mission priorities and there was substantial flexibility given to commanders to evaluate those particular needs of each squadron. There's no evidence in the record that the individuals who evaluated Mr. Capaia also evaluated the historian. And in any event, it's natural to assume that a historian would have specialized certifications that perhaps you or I would not be qualified to perform. That is, the historian's position was sufficiently specialized that no other employees could have performed that work. As Master Sergeant Murphy explained and was certified at the chain of command, several other employees in the 15th Maintenance Group could have performed the functions associated with plaintiff's position. Plaintiff does not contest that and there's plenty of evidence in the record supporting that statement. And there's no evidence that Sergeant Murphy's recommendation was inconsistent or that there was any reason for him to lie. All of the evidence supports that fact. And I can direct you to excerpts of Record 130 to 131 in which Major Rairdon, who was Master Sergeant Murphy's supervisor, effectively certified the recommendation to Colonel Novotny. And Major Rairdon was intimately familiar with Mr. Capaia's work. He was regularly on the floor of the Maintenance Group and would have seen all of the employees in action. That is, he would have understood which positions were and were not mission critical. And there's no evidence in the record to suggest that any of the other commanders in the Air Force hierarchy were biased against Mr. Capaia in any way, much less that Master Sergeant Murphy was biased against him. Well, what about hiring somebody else into that position six months later? Again, two responses, Your Honor. For one, there's no evidence in the record as to what that particular person was or what the demographic characteristics of that person. Plaintiff provided no evidence to survive summary judgment on that fact. Second, that the position went unoccupied for six months only underscores the fact that the position was not mission critical. For those six months, other employees in the 15th Maintenance Group were able to fill the responsibilities of that position and backfill them in addition to their own responsibilities. So that the position was subsequently filled is no evidence of discrimination. And in any event, the directive given by Air Force leadership stated that re-employed annuitants needed to be terminated because of budgetary uncertainties and different problems with the Air Force's budget in Washington, and perhaps six months later that they had the budget to be able to fill that position. Again, there's no evidence in the record on any of these facts, which plaintiff needed to provide in order to survive summary judgment. If there are no other questions, we ask that the court affirm and we rest on our briefs. Thank you. You have about a minute and a half for a rebuttal. You have about a minute and a half for a rebuttal. Well, I don't think there's any doubt, at least in my mind, that there are tribal issues of fact as to just exactly what Navani knew, whether there was any independent investigation, or whether or not he just simply signed something that came down from Murphy through Rardin to Navani and ended up with a three-star general in Washington. Rardin made clear, and Navani acknowledged in his declaration, that he relied entirely on the direct supervisor. The direct supervisor authored the recommendation that went to Washington. That's in the record. That's what Rardin said. Rardin signed it. He was the major who was above. It is so clear, if you look at the declaration, that Navani didn't know what was going on. He specifically said he never heard of the disabilities. Those were not reported to him by... If you have a situation where you're a direct supervisor and asked to recommend whether someone should be dismissed, and you withhold from higher chain of command that you threaten this guy with dismissing him six months before, you are prejudiced. You have compromised yourself. If Navani had known about that threat, he would have sought information elsewhere. It also caused Navani to make two false statements of fact, which is that, number one, my client had no background in fuel systems, and number two, that the qualifications and experience were important when the judge found that they weren't important, that the only matter was the job duties. It is clear there's a problem with that recommendation. And keep in mind that that letter from Washington did not say what mission critical meant. It did not order a reduction. It just said get rid of anyone who's not mission critical. It did not even tie it to keeping airplanes in the sky. It set up a perfect situation where a sergeant with a vendetta, and it's enough of a vendetta that somebody comes to him and says, you're giving me too much work, and I need a reduction. And you don't do that to a sergeant without that sergeant getting even with you. To say there's no motivation from Murphy to get rid of him when he's threatening him with dismissal six months before he fires him is just, you know, ignores the record. There's enough of evidence in this case to pass this case to the jury. Thank you. Thank you. Thank both counsel for argument this morning. The case of Gapaya v. Wilson is submitted.
judges: Farris, McKeown, Bade